IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

MISTY BATES,                    )

                                )

        Plaintiff,            )    TC-MD 210385G

                                )

        v.                        )

                                )

DEPARTMENT OF REVENUE,     )

State of Oregon,              )

                                )

        Defendant.          )    **DECISION**

Plaintiff appealed Defendant's denial of the Working Family Household and Dependent

Care (WFHDC) credit she claimed on her 2020 return.  At trial, Plaintiff appeared *pro se*; both

she and her mother, Donna Bates, testified.  Defendant was represented by its auditor, Brianne

Aguilar-Lopez, who also testified.  Plaintiff's Exhibits 10 to 12 and Defendant's Exhibits A to F

were admitted.

## I.  STATEMENT OF FACTS

In August 2019, Plaintiff moved to be near her family and started a new job.  At the time,

her daughter was in first grade and her son had not yet started school.

Plaintiff testified that her mother helped care for the children, initially without pay, and

that Plaintiff began paying her after receiving a large tax refund in early 2020.  Plaintiff further

testified that she was subsequently sent home for ten weeks after the COVID-19 state of

emergency was declared.  During that time, Plaintiff qualified for unemployment benefits.

Plaintiff testified that her mother continued to help care for the children while she was at home,

picking them up after lunch to give Plaintiff a break.  Plaintiff testified that she continued to pay

her mother "as a token of [her] appreciation," explaining: "I had the money.  I've never gotten so

much money in my life, getting that extra $600 per week, and I thought she was a huge help to

me. Without her, I didn't think I could survive it." At the end of the ten weeks, Plaintiff returned to work, but the schools remained closed, so her children attended school online each morning at the home of a friend who lived near Plaintiff's mother. Plaintiff testified that her mother continued to pick up the children after lunch for the remainder of the year.

Plaintiff's mother provided the following explanation of the child care arrangement in a letter submitted during the audit:

> "Since this pandemic started I have been caring for my grandchildren. With the exception of the first 3 months when [Plaintiff] stayed home and her job was protected by the CARES Act. So for the first 3 months [Plaintiff] collected unemployment and the additional $600 for pandemic.

> "Once it was time for [Plaintiff] to go back to work there really was no childcare to be found, so I made the choice to reduce my hours at work significantly to care for [Plaintiff's children]. Since [Plaintiff] is a single working mother, we felt it important that she go back to work full time as she is the sole provider. Normally, I wouldn't charge to care for my grandchildren, but I wasn't working the hours I normally would and also gave up promotions because I was only available a few hours a week.

> "We had no idea the pandemic would go on this long and really didn't think about having to show proof. I charged her as little as I could to cover the wages I was losing and that would cover my bills and that . . ."

(Ex C at 2.) The copy of the letter provided to the court ends in mid-sentence at the bottom of the page. At trial, Plaintiff's mother testified that her letter had erroneously stated that Plaintiff stayed home for three months, when in fact she had only stayed home for ten weeks. Plaintiff's mother testified that she had not been feeling well when she wrote the letter.

Plaintiff testified that she paid her mother in cash. Thirteen receipts for cash payments from Plaintiff to her mother were submitted into evidence. The receipts were dated and signed by Plaintiff's mother, but did not contain receipt numbers. Each receipt stated that it was "for childcare for [Plaintiff's children]" over a specific time period. The receipt dates and amounts were as follows:

| | |
|---|---|
| January 4, 2020 | $150 |
| February 29, 2020 | $650 |
| March 1, 2020 | $700 |
| April 6, 2020 | $600 |
| May 4, 2020 | $600 |
| June 1, 2020 | $700 |
| July 6, 2020 | $700 |
| August 3, 2020 | $600 |
| September 1, 2020 | $600 |
| October 2, 2020 | $700 |
| November 2, 2020 | $600 |
| December 1, 2020 | $600 |
| January 1, 2021 | $7,200 |

(Ex B at 1–4.)  Plaintiff's mother testified that each receipt's date was the date she both received the cash payment and issued the receipt.  She testified that the $7,200 receipt represented a total of all the amounts paid in 2020.

Plaintiff testified that she paid her mother with cash on hand—some left over from her tax refund, and some from cashed unemployment checks.  She testified that she cashed some unemployment checks and deposited others.

Plaintiff's bank statements show that she received sizable state and federal tax refunds by electronic deposit on April 3 and April 6, 2020.  (Ex F at 11–12.)  The statements show a total of $4,560 in cash withdrawals over the course of the year, as follows:

| | |
|---|---|
| January 13, 2020 | $400 |
| January 22, 2020 | $60 |
| March 19, 2020 | $400 |
| April 6, 2020 | $100 |
| April 15, 2020 | $300 |
| September 1, 2020 | $1,000 |
| September 3, 2020 | $1,000 |
| September 28, 2020 | $800 |
| October 26, 2020 | $500 |

(Ex F at 5, 12, 16, 31, 36, 41.)

/ / /

Excluding one duplicate, Plaintiff provided a list of check numbers and amounts of 17 checks issued to her by the Unemployment Department. (Ex D at 13.) Plaintiff testified that, at her request, the Unemployment Department had given her a list only of checks that had been cashed, not of checks that had been deposited into bank accounts. Check images from her bank were provided for twelve of the listed checks, all of which Plaintiff testified she had cashed rather than deposited. (*Id*. at 1–12; Ex E at 17.) Plaintiff testified that she never received the five listed checks for which no images were provided, but that someone else had obtained those checks and cashed them.

Seven of the twelve check images showed a payable amount of $600, and five showed a payable amount of $191, for a total of $5,155. (Ex D at 1–12.) The face of each imaged check stated a date identifying the end of the week for which payment had been provided; those dates ranged from April 11, 2020, to June 6, 2020. (*Id*.) While each check bore the same issue date on its face—June 30, 2020—one of two other dates was printed above each image by Plaintiff's bank: August 3, 2020, or September 8, 2020.[1] (*Id*.) Plaintiff's bank statements show deposits of three $600 checks and two $191 checks on August 3, 2020, and of four $600 checks and three $191 checks on September 8, 2020, for a total of $5,155. (Ex F at 27, 34.)

Plaintiff's bank printed a "sequence number" above each check image and included a "ref number" for each unemployment check deposit on the bank account statement. For example,

---

[1] The court takes judicial notice of news reports stating many Oregonians' unemployment checks were delayed by weeks or months at the outset of the COVID–19 emergency. *E.g.*, Claire Withycombe & Bill Poehler, *Thousands in Oregon desperate as they can't get the unemployment they're owed*, Statesman Journal (May 24, 2020), https://www.statesmanjournal.com/story/news/politics/2020/05/24/oregon-coronavirus-unemployment-benefits-delayed-months/5141482002/ (accessed May 31, 2022); Kate Davidson, *Federal data sheds light on Oregon unemployment delays*, Oregon Public Broadcasting (Sept 28, 2020), https://www.opb.org/article/2020/09/28/federal-data-sheds-light-on-oregon-unemployment-delays/ (accessed May 31, 2022); Mike Rogoway, *Oregon was among the slowest at paying jobless benefits after pandemic hit*. The Oregonian/Oregon Live (Oct 18, 2020), https://www.oregonlive.com/business/2020/10/oregon-was-among-the-slowest-at-paying-jobless-benefits-after-pandemic-hit.html (accessed May 31, 2022).

the three $600 check images associated with August 3, 2020, had ten-digit sequence numbers ending in 177, 181, and 183. The bank account statement's line items for the three $600 check deposits on August 3, 2020, had similar ten-digit reference numbers ending in 176, 180, and 182. (Exs D at 1, 3, 5; F at 27.)

On her 2020 return, Plaintiff claimed the WFHDC credit based on $7,200 in payments for child care, and Defendant disallowed the entire amount. (Ex A at 10.) On appeal, Plaintiff concedes that payments made for the ten weeks she stayed home with her children do not qualify for the credit, but she seeks reversal of the rest of Defendant's adjustment. Defendant asks the court to uphold the disallowance of the WFHDC credit.

## II. ANALYSIS

The issue in this case is whether Plaintiff has shown that she paid her mother for child care in 2020 and thereby qualified for the WFHDC credit. Because Plaintiff asks the court to partly reverse Defendant's adjustment, she must bear the burden of proof to obtain the relief she seeks. *See* ORS 305.427.[2]

The WFHDC credit is a refundable credit available to eligible taxpayers for a percentage of their employment-related expenses, including their child care expenses. ORS 315.264(1)(a); IRC § 21(b).[3] Child care expenses must be "paid for" child care. *See* IRC § 21(b)(2)(A).

Taxpayers who pay for child care with cash face "significant challenges" in proving payment because they lack the canceled checks that provide "evidence that an expense was paid on a certain date to a specific individual or entity" by the taxpayer. *Shirley v. Dept. of Rev.*, TC–MD 130451D, 2014 WL 811543 at *3 (Or Tax M Div Mar 3, 2014). Contemporaneous receipts

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2019.

[3] Internal Revenue Code (IRC).

properly completed by the care provider are "essential evidence" for those who pay in cash. *Id*. Documentary evidence and testimony are evaluated in light of one another: "Inadequately explained discrepancies between testimony and the documented evidence diminish the probative value of both." *Zerba v. Dept. of Rev.*, TC-MD 190373G, 2020 WL 7489029 at \*2 (Or Tax M Div Dec 21, 2020).

The court accepts the testimony of Plaintiff and her mother that Plaintiff stayed home from work for ten weeks, and that the "three months" written of in the letter was inaccurate. The latest week for which a check image shows Plaintiff received unemployment benefits is that ending June 6, 2020, which is consistent with a ten-week hiatus beginning shortly after the Oregon's COVID–19 state of emergency was declared.[4]

It was therefore in June that Plaintiff returned to work, and in June that Plaintiff's mother states she "made the choice to reduce [her] hours at work significantly to care for [Plaintiff's children]." In her letter Plaintiff's mother stated that she charged for child care because she reduced her hours when Plaintiff returned to work. But Plaintiff's mother signed receipts stating that she was paid for child care in January, February, March, April, and May. Given the particularity with which Plaintiff's mother described the events leading up to her decision to cut her hours and charge for child care, the inconsistency between her letter and the receipts is not adequately explained.

Further difficulties appear in attempting to reconcile Plaintiff's testimony that she paid her mother in cash throughout the year with the documents. For Plaintiff to have paid her mother $7,200 in cash, she must have had cash other than what she withdrew from her bank account. The receipts indicate Plaintiff paid her mother $4,700 from January through August, but her bank

---

[4] The court takes judicial notice that Oregon's COVID–19 state of emergency was declared in March 2020.

statements show withdrawals totaling $4,560 for the entire year, with only $1,260 of that amount withdrawn from January through August. Plaintiff testified the extra cash for child care payments came from a tax refund and from unemployment checks.

Plaintiff testified that her tax refund in early 2020 gave her the cash reserve that allowed her to start paying her mother, implying she had no such cash reserve before 2020. Her 2020 bank statements show she received state and federal tax refunds by electronic deposit in April. Withdrawals made after that that electronic deposit do not account for the alleged cash payments. It is conceivable that Plaintiff either received a second set of refunds by check earlier in 2020, or else had some of her April refund allocated to check instead of an electronic deposit. However, she testified to neither of those circumstances, and a refund allocation in April would not account for the earlier cash payments. Based on the testimony and bank statements, it does not appear that Plaintiff either had a significant cash reserve before 2020 or accumulated one from her April tax refunds.

Although Plaintiff testified that she cashed all the unemployment checks for which she provided images, her bank statements show she made deposits equal to those checks on August 3 and September 8, the two days associated with the checks on the bank-provided images. That fact suggests that the imaged checks were the same checks that were deposited.

Plaintiff argues that the differences between the sequence numbers on the check images and the ref numbers on the bank deposit line items show the deposits were of unemployment checks besides the ones shown in the check images. If that were the case, the seven $600 checks she deposited would be in addition to the seven $600 imaged checks—a total of at least fourteen $600 unemployment checks. However, Plaintiff testified that the $600 checks were weekly and that she had been unemployed for only ten weeks; she should not have received more than ten

such checks.  While the significance of the sequence numbers and "ref" numbers is unclear, the evidence as a whole shows it is more likely that the checks for which images were provided were the same ones Plaintiff deposited.

After Plaintiff made two $1,000 withdrawals in early September, she might have had cash on hand to pay her mother.  However, given the inconsistencies between the receipts, the bank statements, the earlier written explanation, and the trial testimony, the September withdrawals alone are not enough to support Plaintiff's claim.  *See Shirley*, 2014 WL 811543 at *3; *Zerba* 2020 WL 7489029 at *2.

## III.  CONCLUSION

Plaintiff has not carried her burden of proving that she paid her mother for child care in 2020.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this _____ day of May 2022.

POUL F. LUNDGREN
MAGISTRATE

***If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.***

***Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.***

***This document was signed by Magistrate Poul F. Lundgren and entered on May 31, 2022.***